1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SAN DIEGO COASTKEEPER, a California non-profit corporation, COASTAL ENVIRONMENTAL RIGHTS FOUNDATION, a California non-profit corporation,<br><br>            Plaintiff,<br><br>    vs.<br><br>CITY OF SAN DIEGO, a municipal corporation<br><br>            Defendant. | Civil Case No. 3:18-cv-01757-JM-WVG<br><br>**ORDER ENTERING AMENDED CONSENT DECREE AND FINAL JUDMENT**<br><br>**(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*)** |

## AMENDED CONSENT DECREE

The following Amended Consent Decree is entered into by and between San Diego Coastkeeper ("Coastkeeper") and Coastal Environmental Rights Foundation ("CERF") (collectively, "Plaintiffs") and Defendant City of San Diego ("City" or "Defendant"). The entities entering into this Consent Decree are each an individual "Settling Party" and collectively the "Settling Parties."

**WHEREAS,** Coastkeeper is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in San Diego, California;

**WHEREAS,** Coastkeeper is dedicated to the preservation, protection, and defense of the rivers, creeks, and coastal waters of San Diego County from all sources of pollution and degradation;

**WHEREAS,** CERF is a non-profit organization founded by surfers in North San Diego County and active throughout California's coastal communities;

**WHEREAS,** CERF was established to aggressively advocate, including through litigation, for the protection and enhancement of coastal natural resources and the quality of life for coastal residents, and one of CERF's primary areas of advocacy is water quality protection and enhancement;

**WHEREAS,** City is the owner and operator of the facility known as the Miramar Landfill, which is located at 5180 Convoy Street, San Diego CA 92111, hereinafter referred to by the Settling Parties as the "Landfill";

**WHEREAS,** City is the owner and operator of the facility known as the Metro Biosolids Center, which is located at 5240 Convoy Street, San Diego CA 92111, hereinafter referred to by the Settling Parties as the "MBC";

**WHEREAS,** City is the owner and operator of the facility known as the North City Water Reclamation Plant, which is located at 4949 Eastgate Mall, San Diego CA 92121, hereinafter referred to by the Settling Parties as the "North City";

**WHEREAS,** City is the owner and operator of the facility known as the South Bay Water Reclamation Plant, which is located at 2411 Dairy Mart Road, San Diego CA 92154, hereinafter referred to by the Settling Parties as the "South Bay";

**WHEREAS,** City is the owner and operator of the facility known as the Point Loma Wastewater Treatment Plant, which is located at 1902 Gatchell Road, San Diego CA 92106, hereinafter referred to

by the Settling Parties as the "Point Loma";

WHEREAS, the Settling Parties refer to the Landfill, MBC, North City, South Bay, and Point Loma facilities individually as a "City Facility" and collectively as the "City Facilities";

WHEREAS, Plaintiffs' members live and/or recreate in and around waters which Plaintiffs' members allege receive discharges from the City Facilities, including San Clemente Creek, Rose Creek, Mission Bay, the Pacific Ocean, the Tijuana River, and the Tijuana Estuary;

WHEREAS, the discharges from the City Facilities are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ, as superseded by Order No. 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ, ("Storm Water Permit"), except for enforcement purposes, and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA");

WHEREAS, on July 31, 2018, Plaintiffs filed a complaint against Defendant in the United States District Court, Southern District of California (Civil Case No. 3:18-cv-01757-JM-WVG), relating to the Storm Water Permit and the City Facilities ("Complaint");

WHEREAS, Defendant denies all Plaintiffs' allegations and claims in the Complaint, and denies that Plaintiffs are entitled to the relief requested in the Complaint;

WHEREAS, The Settling Parties' original Consent Decree was entered by the Court on November 20, 2018 (Docket No. 10). This Amended Consent Decree modifies the timeframe by which Defendants' compliance obligations must be accomplished and extends the Termination Date accordingly. This Amended Consent Decree has been negotiated in good faith, and will avoid further litigation among the Settling Parties.

WHEREAS, Plaintiffs and Defendant, through their authorized representatives and without either adjudication of Plaintiffs' claims or admission by the Defendant of any alleged violation or other wrongdoing, have agreed that it is in the Settling Parties' mutual interest to enter into an Amended Consent Decree and intend by this Amended Consent Decree to resolve in full Plaintiffs' allegations in the Complaint and avoid the cost and uncertainties of litigation;

WHEREAS, all actions taken by City pursuant to this Amended Consent Decree shall be made

in compliance with all applicable federal, state and local rules and regulations.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.      The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a);

2.      Venue is appropriate in the Southern District of California pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the City Facilities are located within this District;

3.      Plaintiffs have standing to bring this action; and

4.      The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Amended Consent Decree for the life of the Amended Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Amended Consent Decree.

**I.      OBJECTIVES**

5.      It is the express purpose of the Settling Parties entering into this Amended Consent Decree to further the objectives set forth in the Clean Water Act and to resolve those issues alleged by Plaintiffs in their Complaint. In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Amended Consent Decree and to comply with the requirements of the Storm Water Permit and all applicable provisions of the Clean Water Act.

**II.      TERM OF AMENDED CONSENT DECREE**

6.      Effective Date of Amended Consent Decree.  The term "Effective Date" as used in this Amended Consent Decree shall mean November 20, 2018.

7.      Termination Date of Amended Consent Decree. The term "Termination Date" as used in this Amended Consent Decree shall mean for each individual City Facility, respectively, the date set forth in Paragraph 16.2.4. of this Amended Consent Decree, unless dispute resolution has been invoked at a City Facility, in which case this Amended Consent Decree will end for that City Facility upon completion of the dispute resolution process pursuant to Article VI.

8.      Early Termination of Amended Consent Decree. This Amended Consent Decree will terminate early for a City Facility in the following circumstances:

8.1. Defendant implements an onsite retention approach (e.g., infiltration, re-use, diversion to sewer, or re-routing flows into the existing wastewater treatment system located onsite) at the City Facility for all storm water discharges;

8.2. The State Water Resources Control Board adopts an amendment(s) to the Storm Water Permit that designates a rainfall-based sizing criteria for the onsite compliance option, and Defendant implements that onsite compliance option at the City Facility per the amendment's requirements; or

8.3. The State Water Resources Control Board adopts an amendment(s) to the Storm Water Permit that designates an offsite compliance option, and Defendant participates in that offsite compliance option for the City Facility per the amendment's requirements.

Defendant shall provide prior written notice to Plaintiffs that early termination has been triggered and a description of the circumstances that satisfy paragraphs 8.1, 8.2 or 8.3 for the City Facility. Plaintiffs shall inform Defendant within thirty (30) calendar days of receipt of Defendant's written notice whether Plaintiffs dispute early termination for the City Facility. Any disputes shall be resolved pursuant to the dispute resolution provisions of this Amended Consent Decree, set out in Article VI below.

## III.    COMMITMENTS OF THE SETTLING PARTIES.

### A.    Submission of Amended Consent Decree to Federal Agencies.

9.    Plaintiffs shall submit this Amended Consent Decree to the United States Department of Justice and the Environmental Protection Agency ("EPA") (collectively "Federal Agencies") within three (3) business days of the final signature of the Settling Parties for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by both Federal Agencies, as evidenced by written acknowledgement of receipt by the Federal Agencies or the certified return receipts, copies of which are to be provided to Defendant. In the event that the Federal Agencies object to entry of this Amended Consent Decree, the Settling Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within a reasonable amount of time. If the Settling Parties are unable to resolve any issue(s) raised by the Federal Agencies, Plaintiffs and

Defendant agree to expeditiously seek a settlement conference with the Magistrate Judge assigned to this matter to resolve the issue(s).

**B.** **Lodging of Amended Consent Decree.**

10.     Within ten (10) calendar days of the Federal Agencies notifying the Settling Parties of no objection to the Amended Consent Decree or expiration of the Federal Agencies' review period specified in paragraph 9 above, whichever is earlier, Plaintiffs will lodge this Amended Consent Decree with the District Court. If the Amended Consent Decree is not entered by the District Court, the Parties shall retain all rights they had in this litigation before the lodging of the Decree.

**C.** **Storm Water Pollution Control Best Management Practices.**

11.     In addition to maintaining the current structural and non-structural Best Management Practices ("BMPs") described in the City Facilities' Storm Water Pollution Prevention Plan ("SWPPP"), Defendant shall develop and implement additional BMPs necessary to comply with the provisions of this Amended Consent Decree and the Storm Water Permit. By December 31, 2018, Defendant shall provide Plaintiffs with analyses describing the additional BMPs that Defendant intends to pursue at each City Facility and an expected timeframe for doing so. Notwithstanding the foregoing, Defendant is not obligated to maintain any BMP that is rendered obsolete, including due to a subsequently installed BMP at the City Facility.

**D.** **Discharge Locations and Storm Water Sampling.**

12.     Discharge Locations. The current storm water discharge sample locations for the Landfill, MBC, North City, South Bay, and Point Loma are identified in Exhibit A, Exhibit B, Exhibit C, Exhibit D and Exhibit E, respectively. The discharge sample locations identified in Exhibits A through E are subject to change and such changes will be documented in SWPPP updates pursuant to paragraph 19.1.

13.     Sampling. The following storm water monitoring procedures shall be implemented at the City Facilities:

13.1.     Frequency. During the life of this Amended Consent Decree, Defendant shall collect samples of storm water discharges from the City Facilities at all discharge sample locations identified in Exhibits A through E (or at the discharge sample

locations as amended in accordance with paragraph 19.1), for a minimum of four (4) Qualified Storm Events ("QSEs")[1] in a Reporting Year (July 1 to June 30), provided that four (4) QSEs occur at each City Facility in a Reporting Year. Defendant shall collect two (2) samples during the first half of the Reporting Year (July 1 through December 31) and two (2) samples during the second half of the Reporting Year (January 1 through June 30), provided that two (2) QSEs occur at each City Facility during each half of the Reporting Year. If, prior to March 1, Defendant has collected samples from two (2) or fewer QSEs, Defendant shall continue to sample QSEs in the second half of the Reporting Year until Defendant has collected a minimum of four (4) samples for the Reporting Year, provided that QSEs continue to occur in the second half of the Reporting Year.

13.2.   Parameters. Defendant shall analyze each storm water sample collected from the City Facilities pursuant to paragraph 13 for the constituents listed in Table 1 for Point Loma, Table 2 for South Bay, Table 3 for North City, Table 4 for MBC, and Tables 5a and 5b for the Landfill.

13.3.   Laboratory. A laboratory accredited by the State of California shall analyze all samples collected pursuant to this Amended Consent Decree unless State of California accreditation does not exist for the sampled constituent.

13.4.   Detection Limits. The laboratory shall use analytical methods adequate to detect the individual constituents at or below the Numeric Levels listed in Table 1 through Table 5b.

13.5.   Hold Time. All samples collected from the City Facilities shall be delivered to the laboratory and analyzed within the holding times required in 40 C.F.R., Part 136, except for pH which will be analyzed using a calibrated instrument for pH that analyzes the sample within fifteen (15) minutes of collection

---

[1] As defined in the Storm Water Permit.

13.6. <u>Results</u>. Defendant shall request that sample analysis results be reported to them within fourteen (14) calendar days of laboratory receipt of the sample, or as soon as possible without incurring "rush" charges.

13.7. <u>Concentrations</u>. Defendant shall request that all sample results for metals be reported by the laboratory in total concentrations.

13.8. <u>Reporting</u>. Defendant shall electronically provide Plaintiffs with the complete laboratory results, including a copy of the Quality Assurance/Quality Control results within the laboratory report for all samples collected at the City Facilities, at the time that Defendant uploads the results to the Storm Water Multiple Application Reporting System ("SMARTS").

**E.** **<u>Discharge Standards.</u>**

14. <u>Numeric Levels</u>. During the life of this Amended Consent Decree, Defendant shall develop and implement BMPs to reduce constituents in storm water discharges at each City Facility to levels at or below those in Table 1 through Table 5b ("Numeric Levels"), as applicable to the particular City Facility, unless Defendant has a current No Exposure Certification ("NEC") for the City Facility in accordance with Section XVII of the Storm Water Permit or this Amended Consent Decree has terminated early for the City Facility under paragraph 8.

**Table 1. Point Loma Wastewater Treatment Plant Numeric Levels**

| Constituent | Level |
|---|---|
| Total Suspended Solids | 100 mg/L |
| Oil and Grease | 15 mg/L |
| pH | 6.0 – 9.0 s.u. |
| Fecal Coliform | 400 MPN/100 mL*** |
| Total Copper** | 0.0058 mg/L |
| Total Lead** | 0.220 mg/L |
| Total Zinc** | 0.095 mg/L |
| Total Aluminum** | 0.75 mg/L |
| Total Iron** | 1.0 mg/L |
| Nitrate + Nitrite Nitrogen** | 0.68 mg/L |
| Ammonia (as N)** | 2.14 mg/L |

** Constituent will be removed from Table 1 if the City's storm water sampling under this Amended Consent Decree results in non-detect levels, for 2 consecutive sampled QSEs, for this constituent.

*** Defendant disputes the applicability of the fecal coliform Basin Plan Objective REC 1 numeric level to discharges from the Point Loma facility due to receiving water characteristics and submits to its application under this Amended Consent Decree solely in the interest of settlement.

**Table 2. South Bay Water Reclamation Plant Numeric Levels**

| Constituent | Level |
|---|---|
| Total Suspended Solids | 100 mg/L |
| Oil and Grease | 15 mg/L |
| pH | 6.0 – 9.0 s.u. |
| E. Coli | 235 MPN/100 mL |
| Total Coliform | 10,000 MPN/100 mL |
| Total Copper** | 0.0332 mg/L* |
| Total Lead** | 0.262 mg/L* |
| Total Zinc** | 0.26 mg/L* |
| Total Aluminum** | 0.75 mg/L |
| Total Iron** | 1.0 mg/L |
| Nitrate + Nitrite Nitrogen** | 0.68 mg/L |
| Ammonia (as N)** | 2.14 mg/L |

* Listed numeric level represents the CTR value when adjusted for hardness, using a conservative hardness concentration of 250 mg/L as CaCO3, as set out in Volume 65, No. 97 of the Federal Register, May 18, 2000, Rules and Regulations, for both hardness and water effects ratios.
** Constituent will be removed from Table 2 if the City's storm water sampling under this Amended Consent Decree results in non-detect levels, for 2 consecutive sampled QSEs, for this constituent.

**Table 3. North City Water Reclamation Plant Numeric Levels**

| Constituent | Level |
|---|---|
| Total Suspended Solids | 100 mg/L |
| Oil and Grease | 15 mg/L |
| pH | 6.0 – 9.0 s.u. |
| E. Coli | 235 MPN/100 mL |
| Total Coliform | 10,000 MPN/100 mL |
| Total Copper** | 0.0332 mg/L* |
| Total Lead** | 0.262 mg/L* |
| Total Zinc** | 0.26 mg/L* |
| Total Aluminum** | 0.75 mg/L |
| Total Iron** | 1.0 mg/L |
| Nitrate + Nitrite Nitrogen** | 0.68 mg/L |
| Ammonia (as N)** | 2.14 mg/L |

* Listed numeric level represents the CTR value when adjusted for hardness, using a conservative hardness concentration of 250 mg/L as CACO3, as set out in Volume 65, No. 97 of the Federal Register, May 18, 2000, Rules and Regulations, for both hardness and water effects ratios.
** Constituent will be removed from Table 3 if the City's storm water sampling under this Amended Consent Decree results in non-detect levels, for 2 consecutive sampled QSEs, for this constituent.

**Table 4. Metropolitan Biosolids Center Numeric Levels**

| Constituent | Level |
|---|---|
| Total Suspended Solids | 100 mg/L |
| Oil and Grease | 15 mg/L |

| Constituent | Level |
|---|---|
| pH | 6.0 – 9.0 s.u. |
| E. Coli | 235 MPN/100 mL |
| Total Coliform | 10,000 MPN/100 mL |
| Total Copper** | 0.0332 mg/L* |
| Total Lead** | 0.262 mg/L* |
| Total Zinc** | 0.26 mg/L* |
| Total Aluminum** | 0.75 mg/L |
| Total Iron** | 1.0 mg/L |
| Nitrate + Nitrite Nitrogen** | 0.68 mg/L |
| Ammonia (as N)** | 2.14 mg/L |

* Listed numeric level represents the CTR value when adjusted for hardness, using a conservative hardness concentration of 250 mg/L as CACO3, as set out in Volume 65, No. 97 of the Federal Register, May 18, 2000, Rules and Regulations, for both hardness and water effects ratios.
** Constituent will be removed from Table 4 if the City's storm water sampling under this Amended Consent Decree results in non-detect levels, for 2 consecutive sampled QSEs, for this constituent.

**Table 5a. Miramar Landfill Numeric Levels***

| Constituent | Level |
|---|---|
| Total Suspended Solids | 100 mg/L |
| Oil and Grease | 15 mg/L |
| pH | 6.0 – 9.0 s.u. |
| Total Zinc | 0.26 mg/L* |
| Total Aluminum | 0.75 mg/L |
| Total Iron | 1.0 mg/L |
| Nitrate + Nitrite Nitrogen | 0.68 mg/L |
| Ammonia (as N)** | 2.14 mg/L |
| Total Lead | 0.262 mg/L* |
| Total Copper** | 0.0332 mg/L* |
| Total Cyanide** | 0.022 mg/L |
| Total Arsenic** | 0.15 mg/L |
| Total Mercury** | 0.0014 mg/L |
| Total Cadmium** | 0.0053 mg/L* |
| Total Silver** | 0.0183 mg/L* |
| Total Phosphorous | 2.0 mg/L |
| Chemical Oxygen Demand | 120 mg/L |
| Fecal Coliform | 400 MPN/100 mL |
| Enterococcus | 61 MPN/100 mL |
| Total Coliform | 10,000 MPN/100 mL |

* Listed numeric level represents the CTR value when adjusted for hardness, using a conservative hardness concentration of 250 mg/L as CACO3, as set out in Volume 65, No. 97 of the Federal Register, May 18, 2000, Rules and Regulations, for both hardness and water effects ratios.
** Constituent will be removed from Table 5a if the City's storm water sampling under this Amended Consent Decree results in non-detect levels, for 2 consecutive sampled QSEs, for this constituent.
*** Constituents in Table 5a will be sampled at their applicable discharge sampling location(s) as listed in Exhibit A.

**Table 5b. Miramar Landfill Subchapter N ELG Numeric Levels***

| Constituent | Level |
|---|---|
| Biochemical Oxygen Demand (BOD) | 140 mg/L |
| Total Suspended Solids | 88 mg/L |
| Ammonia (as N) | 10 mg/L |
| a-Terpineol | 0.033 mg/L |
| Benzoic Acid | 0.12 mg/L |
| p-Cresol | 0.025 mg/L |
| Phenol | 0.026 mg/L |
| Zinc | 0.2 mg/L |
| pH | 6.0 – 9.0 s.u. |

* Constituents in Table 5b will be sampled at their applicable discharge sampling location(s), as listed in Exhibit A. Constituents in Table 5b will not be sampled under this Amended Consent Decree during a sampled QSE if there are no discharges of "contaminated storm water" as defined in 40 CFR 445.2.

15.    Action Plan for Numeric Level Table Exceedances.  Defendant shall submit an Action Plan to Plaintiffs for reducing the level of a constituent at a City Facility to Table Numeric Levels if Defendant's sampling under this Amended Consent Decree during a single Reporting Year reveals either: (1) a single exceedance of double or more the constituent's Table Numeric Level at any City Facility sampling location; or (2) more than two exceedances of the Table Numeric Level for a single constituent, considering all discharge sampling locations at the City Facility (and with no averaging of each discharge sampling location's results). Any Action Plan required by this paragraph shall be prepared by a Qualified Industrial Storm Water Practitioner ("QISP") and must be submitted to Plaintiffs by the July 31 following the Reporting Year in which exceedances occurred that triggered the Action Plan. For example, if an Action Plan is triggered by exceedances during the 2018/2019 Reporting Year (i.e., July 1, 2018 – June 30, 2019), then the Action Plan will be due July 31, 2019.

16.    Action Plan Requirements.

16.1. Identification and Assessment. An Action Plan shall include:

16.1.1.    The identification of the constituent(s) discharged in excess of the Table Numeric Level(s), which triggered an Action Plan under paragraph 15;

16.1.2.    An assessment of the source of each constituent discharged in excess of the Table Numeric Level(s);

16.1.3.    Either (a) the identification of additional BMPs, including both preventing the exposure of pollutant and pollutant sources to storm water and further treatment of storm water prior to discharge from the City Facility that will

11

reduce constituent concentrations to those below Table Numeric Levels, or (b) for those constituents where there is no California Toxics Rule or other established receiving water limitation, the identification of and demonstration that BMPs the Defendant has developed and implemented achieve BAT/BCT, and that further feasible BMPs will not achieve the Table Numeric Level(s) for that City Facility; and

16.1.4.   The time schedule(s) for implementation of the proposed BMPs.

16.2.   <u>Implementation Schedule</u>.  The time schedule(s) for implementation of the BMPs identified following the Action Plan assessment are:

16.2.1.   <u>Non-Structural BMPs</u>.  The time schedule(s) for implementation shall ensure that all non-structural BMPs are implemented as soon as possible, but in no case later than three (3) months after the submission of the Action Plan to Plaintiffs, provided however that Defendant may have a single time extension for up to an additional three (3) months with the submission of the following information to Plaintiffs:

16.2.1.1.   An explanation of why it would be infeasible to implement the non-structural BMP(s) in the Action Plan within three (3) months despite the exercise of due diligence and good faith effort;

16.2.1.2.   A schedule and detailed description of the necessary tasks to be performed; and

16.2.1.3.   A description of any additional temporary Non-Structural BMPs that will be implemented while permanent BMPs are being constructed.

16.2.2.   <u>Structural BMPs</u>.  Structural BMPs shall be implemented as soon as possible and in accordance with the following time schedule(s): (i) structural BMPs identified in an Action Plan due on July 31, 2019 (for the 2018/2019 Reporting Year) shall be implemented no later than six (6) months after the submission of the Action Plan to Plaintiffs; and (ii) structural BMPs identified in an Action Plan due on July 31, 2020 (for the 2019/2020 Reporting Year)

and later (for any subsequent Reporting Year) shall be implemented no later than three (3) months after the submission of the Action Plan to Plaintiffs. Defendant may have a single time extension in all these cases of up to six (6) additional months with the submission of the following information to Plaintiffs:

16.2.2.1.   An explanation of why it would be infeasible to implement the Structural BMP(s) in the Action Plan upon the time schedule(s) identified in an Action Plan despite the exercise of due diligence and good faith effort;

16.2.2.2.   A schedule and detailed description of the necessary tasks to be performed; and

16.2.2.3.   A description of any additional temporary structural BMPs that will be implemented while permanent BMPs are being constructed.

16.2.3.   Process for Alternate Time Schedule. The Settling Parties may agree on a later date for BMP implementation than otherwise specified in paragraphs 16.2.1 and 16.2.2, based on the time needed to design, procure, and install the necessary equipment or implementation within the required time period is not possible due to force majeure, as defined in paragraph 48, below. Plaintiffs will not unreasonably withhold agreement to extend the deadline, as needed.

16.2.4.   Alternate Time Schedules.  The Settling Parties have agreed to the following alternate dates for completion of BMP implementation described in each Facility's updated Action Plan:

    a.   Landfill – December 1, 2024;

    b.   MBC – December 31, 2024;

    c.   North City – December 31, 2025;

    d.   South Bay – December 31, 2024; and

    e.   Point Loma – December 31, 2026.

16.2.5.   Time Schedule Disputes.  Any disputes over the deadline for

implementation of additional BMP(s) identified in an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Amended Consent Decree, set out in Article VI below.

    16.3.   Action Plan Review.

        16.3.1.   Plaintiffs shall have thirty (30) calendar days upon receipt of Defendant's Action Plan to provide Defendant with comments on the Action Plan. Within thirty (30) calendar days of Defendant's receipt of Plaintiffs' comments on the Action Plan, Defendant shall consider Plaintiffs' comments and shall either incorporate them into the Action Plan or, if Defendant declines to accept one or more of Plaintiffs' comments, provide Plaintiffs with a written explanation of the grounds for rejection.

        16.3.2.   Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan. Any disputes as to the adequacy of the Action Plan shall be resolved pursuant to the dispute resolution provisions of this Amended Consent Decree, set out in Article VI below.

17.   Defendant shall notify Plaintiffs in writing when an Action Plan has been completely implemented.

**F.**    **Storm Water Pollution Prevention Plan and Monitoring Implementation Plan.**

18.   Initial Revisions to SWPPP and/or MIP.  Within sixty (60) calendar days of the Effective Date of this Amended Consent Decree, Defendant shall revise the City Facilities' SWPPP and/or Monitoring Implementation Plan ("MIP") as applicable to include:

    18.1.   All BMPs that are currently utilized at the City Facilities;

    18.2.   All BMPs identified and currently implemented pursuant to this Amended Consent Decree and/or the Storm Water Permit;

    18.3.   The specific position(s) responsible for compliance with the Storm Water Permit and this Amended Consent Decree, including specifying which position is responsible for each area of compliance;

18.4.   A detailed site map that includes at a minimum all information required by the Storm Water Permit and this Amended Consent Decree;

18.5.   A description of each industrial activity, all potential pollutant sources, and each potential pollutant associated with each industrial activity and/or pollutant source;

18.6.   Incorporate the requirements of the Storm Water Permit and this Amended Consent Decree.

19.   Additional and Ongoing Revisions to SWPPP and/or MIP.

19.1.   Changes to City Facility Operations.  Defendant shall revise the SWPPP and/or MIP if there are any significant changes in the City Facilities' operations, including but not limited to changes to storm water discharge point(s)/sample location(s) or changes or additions to the BMPs resulting from an Action Plan.

19.2.   SWPPP Pollutant Source Assessments.

19.2.1.   Non-Fecal Indicator Bacteria Constituents.  Defendant may remove a constituent from a City Facility's SWPPP and the above Numeric Levels Tables for the City Facility if new information becomes available supporting an amended SWPPP pollutant source assessment relating to the constituent, including a demonstration that the Numeric Level exceedance(s) are solely caused by natural background sources or non-industrial pollutant sources (consistent with Sections XII.D.2.b and c of the Storm Water Permit), and the following is satisfied: (i) Defendant submits a written evaluation in support of the amended SWPPP pollutant source assessment determination to a mutually agreed upon third party consultant, which must be a QISP and Trainer of Record, for review; and (ii) the third party consultant subsequently concurs with the City's evaluation.

19.2.2.   Fecal Indicator Bacteria Constituents. Defendant may remove fecal indicator bacteria constituents from the SWPPP for Point Loma, North City, South Bay, or MBC, and from that City Facility's Numeric Levels Table in

this Amended Consent Decree if Defendant conducts testing at the City Facility that achieves HF183 human marker analytical results below lab quantification levels, as measured at all applicable discharge sample locations at the City Facility, for four (4) consecutive sampling events. If satisfied, Defendant is not required to provide a written evaluation to a third party consultant, as described in paragraph 19.2.1, prior to removing fecal indicator bacteria constituents from the City Facility's SWPPP and the Numeric Levels Table for that City Facility.

20.     Commenting on Revised SWPPP and/or MIP. Defendant shall submit any revised SWPPP and/or MIP to Plaintiffs for review and comment within five (5) calendar days of completion. Plaintiffs shall provide comments, if any, to Defendant within thirty (30) calendar days of receipt of any revised SWPPP and MIP. Within thirty (30) calendar days of receiving comments from Plaintiffs, Defendant shall incorporate Plaintiffs' comments into any revised SWPPP and/or MIP or shall justify in writing why any comment is not incorporated. Any disputes as to the adequacy of the SWPPP and/or MIP shall be resolved pursuant to the dispute resolution provisions of this Amended Consent Decree, set out in Article VI below.

**G.     Visual Observations.**

21.     During the life of this Amended Consent Decree, Defendant shall conduct and document visual observations pursuant to the Storm Water Permit and as more fully described in each City Facility SWPPP.

**H.     Employee Training.**

22.     Within forty-five (45) calendar days of the Effective Date of this Amended Consent Decree, Defendant shall develop and implement additional employee training in order to familiarize employees at the City Facilities with the requirements of the Storm Water Permit and this Amended Consent Decree ("Training Program"). The Training Program shall include use of written training materials needed for effective implementation of the training program. Defendant shall also ensure that there are a sufficient number of employees, contractors and/or consultants assigned to implement the BMPs and conduct other compliance activities required by the Storm Water Permit and this Amended

Consent Decree, and that these employees, contractors and/or consultants are properly trained to perform the required activities.

23.　　The training program shall require at least the following:

23.1.　Non-Storm Water Discharge Training. Defendant shall train employees on the Storm Water Permit's prohibition of non-storm water discharges, so that employees know what non-storm water discharges are, which can result from improper practices that may produce non-storm water discharges at the City Facilities, and how to detect and prevent them;

23.2.　BMP Training. Defendant shall train employees on BMP implementation and maintenance to ensure that BMPs are implemented effectively to prevent or minimize the exposure of pollutants to storm water, to prevent or minimize the discharge of contaminated storm water, and to ensure the proper treatment of storm water at the City Facilities;

23.3.　Sampling Training. Defendant shall designate an adequate number of employees, contractors and/or consultants to ensure the collection of storm water samples from each discharge location as required by this Amended Consent Decree and/or the Storm Water Permit. The training shall include the proper sampling protocols, including chain of custody requirements, to ensure storm water samples are properly collected, stored, and submitted to a certified laboratory.

23.4.　Visual Observation Training. Defendant shall provide training to all individuals performing visual observations at the City Facilities pursuant to this Amended Consent Decree and/or the Storm Water Permit that includes when visual observations are required, the different types of visual observations required, and instruction on proper record keeping under the Storm Water Permit.

24.　　Ongoing Training.  Training shall be provided on an annual basis, or as otherwise required to ensure compliance with the terms of this Amended Consent Decree, by a consultant or a representative of Defendant who is familiar with the requirements of this Amended Consent Decree and the Storm Water Permit. The training shall be repeated as necessary to ensure that employees are

familiar with the requirements of this Amended Consent Decree, the Storm Water Permit, and the City Facilities' SWPPP and MIP, as appropriate to the particular employee's job descriptions. Any new employee who is responsible for implementation of any portion of the SWPPP, the MIP, or compliance with other terms of the Storm Water Permit or Amended Consent Decree shall receive training within thirty (30) calendar days after being hired, or before being responsible for compliance with the terms of the Storm Water Permit or Amended Consent Decree.

25.    Training Records.  Defendant shall maintain training records to document compliance with Section H of this Amended Consent Decree, and shall make these records available, upon Plaintiffs' request, at the City Facilities. The Training Program shall be specified in the SWPPP and Defendant shall modify the SWPPP as necessary to reflect the Training Program required by this Amended Consent Decree.

## IV.    COMPLIANCE MONITORING AND REPORTING

26.    Site Inspections. Each Reporting Year for the life of this Amended Consent Decree, Plaintiffs and their representatives, accompanied by Defendant representatives, may conduct up to two (2) noticed site inspections at each City Facility. The site inspections shall occur during normal business hours, and Plaintiffs shall provide Defendant with three (3) calendar days' notice of an intended inspection. If a Wet Season inspection is noticed, Plaintiffs will continue to follow the weather forecast, and will confirm the Wet Season inspection at least twenty-four (24) hours prior to the start of the inspection in an effort to ensure Plaintiffs catches a rain event producing a discharge during the inspection. During inspections, Plaintiffs' representatives will wear appropriate personal protective equipment (PPE) and remain in the presence of Defendant's representatives at all times.

27.    During the site inspection, Plaintiffs and/or their representatives shall be allowed access to the City Facility's SWPPP, MIP, and other monitoring records, reports, and Storm Water Permit sampling data for the City Facility. In addition, during the site inspection, Plaintiff and/or their representatives may, at their own cost, collect grab samples of discharges from the City Facilities. Plaintiffs may collect samples for any of the constituents included in Table 1 through 5b, as applicable to the City Facility, and shall orally list the constituents that Plaintiffs intend to analyze at the commencement of the site inspection. Plaintiffs shall provide split samples to Defendant, shall allow

Defendant to photograph and/or videotape the sample collection process, and shall provide Defendant with a designation of who will perform any discharge sampling. Any samples collected by Plaintiffs shall be collected in accordance with Attachment H of the Storm Water Permit and submitted to a certified California laboratory for is unless State of California accreditation does not exist for the sampled constituent. Copies of the complete laboratory reports shall be provided to Defendant within five (5) business days of receipt.

28.     <u>Reporting and Documents</u>. During the life of this Amended Consent Decree, Defendant shall provide Plaintiffs with a copy of all documents related to the Storm Water Permit at the City Facilities that are submitted to the Regional Board, the State Board, and/or any State or local agency or municipality. Such reports and documents shall be provided to Plaintiffs concurrently as they are sent to the agencies and/or municipalities. Any correspondence related to Defendant's compliance with the Storm Water Permit received by Defendant from any regulatory agency, State or local agency, county, and/or municipality shall be provided to Plaintiffs within ten (10) business days of receipt by Defendant.

29.     <u>Compliance Monitoring and Oversight</u>.  Defendant shall compensate Plaintiffs for costs and fees incurred for monitoring City's compliance with this Amended Consent Decree ("Monitoring Fees").  Plaintiffs shall prepare a joint invoice for submittal to Defendant. The invoice shall include a description of the monitoring activity, the time spent, which City Facility the monitoring activity pertains to, and the rate charged for each person that performs monitoring activities. Subject to the Dispute Resolution provision in Article VI, below, Defendant shall compensate Plaintiffs for costs and fees incurred for monitoring meeting(s) attendance, review of Defendant-related documents and monitoring reports and Action Plans, submission of Plaintiffs' comments, meetings held to discuss compliance deadlines, site inspections, and attendance at additional mutually agreed upon meetings between the Settling Parties. Review of Storm Water Permit information or publicly distributed information from the State Board or Regional Board shall not be expensed or included in the invoice. Payment shall be made within forty-five (45) calendar days of receipt of an invoice from Plaintiffs for such compliance efforts, payable to "Coast Law Group, LLP Attorney Client Trust" and sent via U.S. Mail or similar delivery service to Coast Law Group, LLP, Attn: Marco Gonzales, 1140 South Coast Highway 101, Encinitas CA, 92024. Invoices shall be submitted by Plaintiffs no more frequently than on

a monthly basis. Total Monitoring Fees shall be capped at $25,000 per year during the term of the Amended Consent Decree.

## V.      ENVIRONMENTAL PROJECT AND REIMBURSEMENT OF LITIGATION FEES AND COSTS

30.     <u>Environmental Project</u>. To remediate the alleged environmental harms resulting from non-compliance with the Storm Water Permit alleged in the Complaint, City agrees to make a payment totaling $35,000 (Thirty-Five Thousand) to fund environmental project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities in the Southern California Bight and its tributaries ("Environmental Project"). Payment shall be made payable to: the San Diego Audubon Society and sent to San Diego Audubon Society, Attn Chris Redford, 4010 Morena Blvd, San Diego, CA 92117.

31.     <u>Reimbursement of Plaintiffs' Fees and Costs</u>. City shall pay a total of $100,000 (One-Hundred Thousand) to Plaintiffs to reimburse Plaintiffs for its investigation fees and costs, expert/consultant fees and costs, and reasonable attorneys' fees incurred as a result of investigating and preparing the lawsuit and negotiating this Amended Consent Decree. Payments shall be made within forty-five (45) calendar days of the Effective Date and payable to "Coast Law Group, LLP Attorney Client Trust" and delivered by certified mail or overnight delivery to: Coast Law Group, LLP, Attn: Marco Gonzalez, 1140 South Coast Highway 101, Encinitas CA, 92024.

## VI.      DISPUTE RESOLUTION

32.     <u>Continuing Jurisdiction</u>.  This Court shall retain jurisdiction over this matter until the Termination Date defined above for the purposes of implementing and enforcing the terms and conditions of this Amended Consent Decree, and adjudicating all disputes among the Settling Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Amended Consent Decree with all available legal and equitable remedies, including contempt.

33.     <u>Meet and Confer</u>. A party to this Amended Consent Decree shall invoke the dispute resolution procedures of this paragraph by notifying all other Settling Parties in writing of the matter(s) in dispute. The Settling Parties shall then meet and confer in good faith (either telephonically or in person) in an attempt to resolve the dispute informally over a period of ten (10)

calendar days from the date of the notice. The Settling Parties may elect to extend this time in an effort to resolve the dispute without court intervention.

34.    <u>Dispute Resolution</u>. If the Settling Parties cannot resolve a dispute by the end of the meet and confer process, the Settling Parties may agree to enter into the Alternative Dispute Resolution process provided by the Unites States District Court for the Southern District of California, including but not limited to stipulating to a hearing or settlement conference before a Magistrate Judge. If the Settling Parties cannot resolve a dispute by the end of the Alternative Dispute Resolution process, the party initiating the dispute resolution provision may invoke formal dispute resolution by filing a motion before the United States District Court for the Southern District of California.

35.    <u>Burden of Proof</u>. The burden of proof for formal dispute resolution shall be in accordance with applicable law. Notwithstanding the foregoing, in the event of any disagreement or dispute between Plaintiffs and Defendant over the necessity or appropriateness of implementing any particular BMP or set of BMPs, Defendant shall bear the burden of demonstrating that its BMPs, collectively, constitute BAT/BCT for the City Facilities, or that it is in compliance with the terms of this Amended Consent Decree. Plaintiffs shall not be required to prove that Defendant's BMPs do not constitute BAT/BCT.

36.    <u>Costs and Fees</u>. Litigation costs and fees incurred in conducting the meet and confer or otherwise addressing and/or resolving any dispute, including an alleged breach of this Amended Consent Decree, shall be awarded in accord with the standard established by Section 505 of the Clean Water Act, 33 U.S.C. §§ 1365 and 1319, and case law interpreting that standard.

**VII.    <u>MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE</u>**

37.    Except for violations of this Amended Consent Decree, which shall be addressed in accordance with the Dispute Resolution provisions in Article VI, and any ongoing payments as set forth in paragraph 29, in consideration of the above, upon the Effective Date of this Amended Consent Decree, the Settling Parties hereby fully release each other and their respective successors, assigns, officers, agents, attorneys, employees, representatives and all persons, firms, and corporations having an interest in them, from any and all claims and demands of any kind, nature, or description, and from any and all liabilities, relief, damages, fees (including fees of attorneys, experts,

and others), injuries, actions, or causes of action, either at law or in equity, whether known or unknown, except for continuing obligations as set forth in this Amended Consent Decree, which the Plaintiffs' have against Defendant arising from the Notice Letter and/or Complaint and the alleged violations of the Clean Water Act, the Storm Water Permit, or other federal and state law, up to and including the Termination Date of this Amended Consent Decree.

38.     Plaintiffs and Defendant acknowledge that they are familiar with Section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Plaintiffs and Defendant hereby waive and relinquish any rights or benefits they may have under California Civil Code section 1542 with respect to any other claims against each other arising from the allegations and claims as set forth or that could have been set forth in the Notice Letter and/or Complaint up to and including the Termination Date of this Amended Consent Decree.

39.     Except as provided for in the Dispute Resolution provisions of this Amended Consent Decree, Plaintiffs' and their officers, executive staff, members of their governing boards and any organization under the control of Plaintiffs, its officers, executive staff, or members of its governing board, shall not pursue or file any action against Defendant seeking relief for any alleged violation of the Clean Water Act, the Storm Water Permit or any revisions thereto, or other related federal and state statutes and/or regulations, relating to the City Facilities, that may be alleged for the period of time beginning on the Effective Date and ending on the Termination Date.  This provision is applicable and will survive beyond the Termination Date of this Agreement.

40.     Nothing in this Amended Consent Decree limits or otherwise affects either Settling Party's right to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before the State Board, Regional Board, EPA, or any other administrative body on any other matter relating to City's compliance with the Storm Water Permit or the Clean Water Act occurring or arising after the Effective Date of this Amended Consent Decree.

## VIII.   **MISCELLANEOUS PROVISIONS**

41.    <u>No Admission of Liability</u>. Neither this Amended Consent Decree, the implementation of additional BMPs, nor any payment pursuant to the Amended Consent Decree shall constitute or be construed as a finding, adjudication, admission, or acknowledgment of any fact, law, or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. City maintains and reserves all defenses they may have to any alleged violations that may be raised in the future. Except as otherwise provided in this Amended Consent Decree, each Settling Party maintains and reserves any and all defenses and claims that it may have to any alleged violations that may be raised by the other Settling Party during the life of this Consent Decree

42.    <u>Construction</u>. The language in all parts of this Amended Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Storm Water Permit, the Clean Water Act, or specifically herein.

43.    <u>Choice of Law</u>. The laws of the United States shall govern this Amended Consent Decree.

44.    <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Amended Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

45.    <u>Correspondence</u>. Unless specifically provided for in this Amended Consent Decree, all notices required herein or any other correspondence pertaining to this Amended Consent Decree shall be sent by U.S. mail or electronic mail as follows:

<u>If to Plaintiffs:</u>

San Diego Coastkeeper
Attn: Phillip Musegaas
8305 Vickers Street, Suite 209
San Diego, CA 92111
Email: phillip@sdcoastkeeper.org

Coastal Environmental Rights Foundation
Attn: Sara Ochoa
1140 South Coast Hwy 101
Encinitas, CA 92024
Email: sara@cerf.org

With a copy to:

Coast Law Group LLP
Attn: Marco Gonzalez
1140 South Coast Hwy 101
Encinitas, CA 92024
Email: marco@coastlawgroup.com

San Diego Coastkeeper
Attn: Patrick McDonough
8305 Vickers St., Suite 209
San Diego, CA 92111
Email: patrick@sdcoastkeeper.org

If to Defendant:

Alia Khouri
Deputy Chief Operating Officer, Infrastructure/Public Works
202 C Street, MS 9A
San Diego, CA 92101
Email: EKhouri@sandiego.gov

Renee Robertson
Director, Environmental Services Department
9601 Ridgehaven Court, Suite 210
San Diego, CA 92123
Email: RobertsonR@sandiego.gov

Juan Guerreiro
Director, Public Utilities Department
9192 Topaz Way
San Diego, CA 92123
Email: JGuerreiro@sandiego.gov

With a copy to:

Melissa Ables
Chief Deputy City Attorney
Shannon Eckmeyer
Deputy City Attorney
Office of the City Attorney
1200 Third Avenue, Suite 1100
San Diego, CA 92101
Email: MAbles@sandiego.gov
          SEckmeyer@sandiego.gov

Nicole Granquist
Downey Brand LLP
621 Capitol Mall, 18th Floor

Sacramento, CA 95814
Email: ngranquist@downeybrand.com

46.      Notifications of communications shall be deemed submitted three (3) business days after having been sent via U.S. mail or the day of sending notification or communication by electronic mail. Any change of address or addresses shall be communicated in the manner described above for giving notices.

47.      <u>Prior Notice for Deadline Extensions and Missed Reporting Deadlines</u>.  Except in a case of force majeure, as described in paragraph 48, Defendant shall contact Plaintiffs to request an extension of any deadline set forth in this Amended Consent Decree, if necessary, at least fourteen (14) calendar days prior to the deadline at issue. Plaintiffs' consent to Defendant's requested extension shall not be unreasonably withheld. Defendant shall make a stipulated payment of $1000 for a missed reporting deadline for the feasibility analyses, as described under paragraph 11, and for an Action Plan, as described under paragraph 15.  Payment shall be made within forty-five (45) calendar days of a missed reporting deadline and payable to the San Diego Audubon Society and sent to the San Diego Audubon Society, Attn Chris Redford, 4010 Morena Blvd, San Diego, CA 92117 via U.S. Mail or similar delivery service. Payments for a missed deadline shall be used to fund the Environmental Project.

48.      <u>Force Majeure</u>.  Defendant shall not be deemed in default, contempt, or breach of this Amended Consent Decree by reason of any event that constitutes a force majeure.  For purposes of this Amended Consent Decree, a force majeure is defined as any event arising from causes beyond the reasonable control of Defendant or its contractors that delay or prevents performance. This includes, without limitation, acts of God, acts of war, acts of terrorism, fire, explosion, extraordinary weather events, restraint by court order or public authority, necessary public agency approvals, or other causes beyond Defendant's reasonable control.

49.      <u>Access to the City Facilities</u>.  Plaintiffs acknowledge that inspection and/or sampling of the City Facilities is potentially hazardous and involves certain risks, including the risks of serious bodily injury, death, and property damage, and Plaintiffs accept and assume all risk of harm to persons and property from Plaintiffs entry upon the City Facilities. To the fullest extent permitted by

law, Plaintiffs shall also defend (with legal counsel reasonably acceptable to Defendant), indemnify, protect, and hold harmless Defendant and its elected officials, agents, officers, employees, and representatives ("Indemnified Parties"), from and against any and all claims, losses, costs, damages, injuries (including, without limitation, injury to or death to Plaintiffs' officers, employees, agents, and contractors), expense, and liability of every kind, nature, and description (including, without limitation, incidental and consequential damages, court costs, and litigation expenses and fees of expert consultants or expert witnesses incurred in connection therewith and costs of investigation) that arise out of, pertain to, or relate to, directly or indirectly, in whole or in part, any personal injury or property damage arising out of, connected with or related to Plaintiffs' inspection and/or sampling of the City Facilities.  Plaintiffs' duty to defend, indemnify, protect and hold harmless shall not include any claims or liabilities arising from the sole negligence or willful misconduct of the Indemnified Parties.

50.     Effect of Amended Consent Decree. Except as provided herein, Plaintiffs does not, by its consent to this Amended Consent Decree, warrant or aver in any manner that City's compliance with this Amended Consent Decree will constitute or result in compliance with any federal, state or local law or regulation. Nothing in this Amended Consent Decree shall be construed to affect or limit in any way the obligation of City to comply with all federal, state, and local laws and regulations governing any activity required by this Amended Consent Decree.

51.     Counterparts. This Amended Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy, email of a .pdf signature, and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Amended Consent Decree.

52.     Modification of the Amended Consent Decree. This Amended Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Settling Parties. If any Settling Party wishes to modify any provision of this Amended Consent Decree, the Settling Party must notify the other Settling Party in writing at least twenty-one (21) calendar days prior to taking any step to implement the proposed change.

53.     <u>Full Settlement</u>. This Amended Consent Decree constitutes a full and final settlement of this matter.

54.     <u>Integration Clause</u>. This is an integrated Amended Consent Decree. This Amended Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Settling Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Amended Consent Decree.

55.     <u>Authority</u>. The undersigned representatives for Plaintiff and City each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Amended Consent Decree.

56.     The Settling Parties certify that their undersigned representatives are fully authorized to enter into this Amended Consent Decree, to execute it on behalf of the Settling Parties, and to legally bind the Settling Parties to its terms.

57.     The Settling Parties, including any successors or assigns, agree to be bound by this Amended Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms.

**IN WITNESS WHEREOF**, the undersigned have executed this Amended Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT

Dated: November 2, 2023          By: <u>s/ Phillip Musegaas</u>_____
                                 Phillip Musegaas, Executive Director
                                 San Diego Coastkeeper

Dated: November 2, 2023          By: s/Sara Kent_____
                                 Sara Kent, Programs Director
                                 Coastal Environmental Rights Foundation

Dated: November 2, 2023          By: <u>s/Kris McFadden</u>_____
                                 City of San Diego
                                 Kris McFadden, Deputy Chief Operating Officer

APPROVED AS TO FORM

Dated: November 2, 2023          By: s/ Patrick McDonough
                                 Patrick McDonough
                                 Attorney for San Diego Coastkeeper

Dated: November 2, 2023          By: s/ Livia Borak Beaudin
                                 Livia Borak Beaudin
                                 Coast Law Group LLP
                                 Attorney for Coastal Environmental Rights Foundation

Dated: November 2, 2023          By: s/ Melissa Ables
                                 Melissa Ables
                                 Chief Deputy City Attorney
                                 Attorney for City of San Diego

Dated: November 2, 2023          By: s/ Nicole E Granquist
                                 Nicole E. Granquist
                                 Downey Brand LLP
                                 Attorney for City of San Diego

**IT IS SO ORDERED.**

**FINAL JUDGMENT**

Upon approval and entry of this Decree by the Court, this Amended Consent Decree shall constitute a final judgment between the Plaintiffs and Defendant.

Date:   November 6, 2023

Honorable Jeffrey T. Miller
United States District Court Judge
Southern District of California